Charles W. **HIBDON**, Appellant,

v.

Kathleen M. **HIBDON**, Appellee.

No. 2006–CA–000634–MR.

Court of Appeals of Kentucky.

Dec. 21, 2007.

Rehearing Denied March 3, 2008.

---

Mark Hyatt Gaston, Louisville, KY, for Appellant.

Susan Shimp Torok, John E. Spainhour, Shepherdsville, KY, for Appellee.

Before MOORE and THOMPSON, Judges; GRAVES,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

Charles Hibdon appeals from a judgment of the Bullitt Circuit Court dividing his pension plan with his ex-wife, Kathleen Hibdon, which confirmed a report by the Domestic Relations Commissioner (Commissioner). Having concluded that the trial court committed palpable error, we reverse and remand.

---

1.  Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

Charles and Kathleen were married on June 10, 1978. Shortly after the marriage, Charles began his employment with the Cissell Manufacturing Company. On December 28, 2004, Kathleen filed a petition for the dissolution of their marriage. After a twenty-seven year marriage, a decree of dissolution was entered on December 16, 2005. All other issues were assigned to the Commissioner for resolution.

The primary disagreement between the parties concerned the present value of Charles' defined benefits pension plan. However, at the hearing, only Kathleen offered evidence in regard to the calculation of the plan's value. Included in Kathleen's evidence was a pension valuation prepared in accordance with a local rule and which was based on a "statement of plan participation" as of October 1, 2005, prepared by Cissell. The document stated that Charles had earned 25.5 years credited service and, to date, had earned benefits payable at age 65 in the amount of $515.50 per month. If he continued to work at Cissell until he reached his normal retirement age of 65, his benefits would be $939.50 per month. Thus, to reach the monthly benefit amount of $939.50, Charles would have to work an additional seventeen years after the date of dissolution.

Despite that the $939.50 monthly benefit was based on Charles' projected post-dissolution employment, Kathleen's calculation of the pension plan's value utilized that benefit amount which was then multiplied by 174 months, Charles' post-retirement life expectancy. That projected payment was then discounted pursuant to the local court rule by an annual discount rate of 2.25 percent resulting in a present value of $95,478.51.

The Commissioner filed a report on January 3, 2006, recommending findings of fact and conclusions of law which included his valuation of Charles' pension plan. The Commissioner found that Charles had "a defined benefit pension plan with a present value of $95,478.51" all of which was marital property and was to be divided equally between the parties. The Commissioner did not explain how he arrived at a 2.25% annual discount rate, nor does the rule allow for the Commissioner to explain the influence of the annual inflation rate or other essential data required to provide a competent analysis of the pension plan's present value.

After no exceptions were filed within ten days, the trial court adopted the Commissioner's report in its entirety. Charles then filed a motion pursuant to Kentucky Rules of Civil Procedure (CR) 59.05 to alter or amend the trial court's order adopting the Commissioner's report. Charles asserted that Kathleen had supplied the Commissioner with inaccurate evidence regarding the value of his pension plan and, consequently, that the Commissioner had erroneously calculated the plan's present value.

Upon receiving Charles' motion, the trial court assigned the matter to the Commissioner for a recommendation as to whether the court's order should be altered or amended. After a hearing, the Commissioner filed his report recommending that Charles' CR 59.05 motion be denied because he had not offered any new evidence which was not readily available to him at the property division hearing.

Before the trial court could act on the recommendation, pursuant to CR 6.05, 53.06(2), and 59.05, Charles filed a motion for a hearing to contest the Commissioner's valuation of his pension plan. On March 2, 2006, after adopting the Commissioner's recommendation to deny the first CR 59.05 motion, the trial court denied Charles' motion to schedule a hearing re-

garding the valuation of his pension plan. This appeal followed.

Charles did not offer the Commissioner any evidence of the present value of his pension and failed to file exceptions to the Commissioner's report within the ten-day limitation as required by CR 53.06(2). Consequently, Kathleen argues that Charles' failings are fatal to his appeal. We disagree.

■ Kathleen misconceives the role of the Commissioner. Under CR 53.06, the trial court owes the Commissioner's report no deference. The trial court has the broadest possible discretion in using the recommendation of the Commissioner to arrive at an independent decision. *Eiland v. Ferrell,* 937 S.W.2d 713, 716 (Ky.1997). Here, the trial court abdicated its discretion to the Commissioner, and the trial court erred by adopting a present day value of Charles' pension plan which is not supported by any competent evidence.

■ Regardless if Charles insufficiently preserved this issue for review, pursuant to CR 61.02, our Supreme Court has held that a palpable error affecting the substantial rights of an individual, even if insufficiently raised or preserved is reviewable, and, reversible upon a conclusion that it has resulted in manifest injustice. *Herndon v. Herndon,* 139 S.W.3d 822, 827 (Ky.2004). An error is palpable only when it is "easily perceptible, plain, obvious and readily noticeable." *Burns v. Level,* 957 S.W.2d 218, 222 (Ky.1997). A palpable error must be so serious that it would seriously affect the fairness to a party if left uncorrected. *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky.2006). Fundamentally, a palpable error determination turns on whether the court believes there is a "substantial possibility" that the result would have been different without the error. *Id.*

As will be discussed further, although the evidence as to the value of the pension was limited and offered only by Kathleen, as a matter of law, the value assigned to the pension plan was clearly erroneous and the error so serious that it must be considered palpable. *Id.*

■ Our standard of review is set forth in *Overstreet v. Overstreet,* 144 S.W.3d 834 (Ky.App.2003). We will not disturb the findings of a trial court in cases involving the division of marital property unless the trial court's decision constitutes an abuse of discretion. *Id.* at 838. Discretion is abused when the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

We now turn to Charles' assignment of error. Charles does not challenge the finding that Kathleen's marital interest in the pension plan is fifty percent as of the date of dissolution. He contends that the trial court erred in its computation of the present value of the plan. Specifically, Charles argues that the trial court miscalculated the present value of his pension plan by allowing Charles' post-divorce earnings to be included in his calculation of the present value of the pension plan. We agree.

■ In *Perry v. Perry,* 143 S.W.3d 632, 633 (Ky.App.2004), the Court held that "pensions in divorce proceedings are to be valued as of the date of [the] decree of dissolution." Additionally, a non-employee spouse cannot receive a share of a pension earned after the divorce and before the employee spouse retires. *Armstrong v. Armstrong,* 34 S.W.3d 83, 86 (Ky.App.2000). "[A] pension is marital property that ceases to appreciate after the date of the divorce." *Perry,* 143 S.W.3d at 634.

■ We conclude that the trial court erred in its calculation of the present value of Charles' pension plan. The trial court improperly used a monthly benefit which included post-divorce earnings to determine the present value of the pension. Because Kathleen's share of the pension was limited to her interest in its accumulated value earned during the marriage, the trial court abused its discretion by allowing Kathleen to receive a share of the pension which included seventeen years of Charles' post-divorce earnings. Accordingly, we reverse the trial court on this issue and remand this matter for a new hearing to determine the marital distribution of Charles' pension as of December 16, 2005, the date of the parties' divorce.

As guidance for the trial court on remand, we make the following observations. The evidence in regard to the issue of the present value of the pension plan was submitted pursuant to a Bullitt County Circuit Court local rule which provides that to establish the value of a pension, a party may submit a pension evaluation with the disclosure statement which shall constitute *"prima facia* proof of the pension value."

■ Generally, the conversion of a pension plan to present day value is highly technical in nature and requires expert testimony. Each plan contains unique language as to survivor spouse benefits, penalty for early retirement due to disability, and the conditions for vesting. The local rule in this case seems to negate the requirement of expert testimony and has not been proven to be based upon accepted accounting or economic principles.

■ We stress that a qualified domestic relations order (QDRO) would be much simpler and is often a preferable method of dividing a pension that is not payable until a distant date. In 1984, Congress passed the Retirement Equity Act which clarified the rights of spouses and former spouses who participate in qualified employee benefit plans such as Charles' pension, 26 U.S.C.A. § 414(p) and 29 U.S.C.A. § 1056(d). Under this law, either party upon motion should be entitled to the entry of a QDRO that divides the pension for future distribution when the spouse becomes eligible to receive retirement payments. The entry of a QDRO ensures that neither party leaves the marriage with little or no present day assets.

For the foregoing reasons, the order of the Bullitt Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.