RENDERED: OCTOBER 2, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0584-ME

MARCELA HUNN                                                      APPELLANT

APPEAL FROM RUSSELL CIRCUIT COURT
v.     HONORABLE JENNIFER UPCHURCH EDWARDS, JUDGE
ACTION NO. 20-D-00011-001

ELIAS FERNADO[1]                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE: Marcela Hunn ("Hunn") appeals the domestic violence

order ("DVO") entered by the Russell Circuit Court, Family Division, on March

26, 2020. After careful review of the record, we affirm.

---

[1] We note that the record on appeal and briefs use multiple spellings of appellee's name. Pursuant to Court policy, the style of the case reflects the parties as listed in the Notice of Appeal.

# BACKGROUND

On February 14, 2020, Elias Fernado ("Fernado") petitioned the Russell Circuit Court for a DVO against Hunn. Fernado alleged that, during a recent argument between the parties, Hunn punched him in the right side of his chest. Based upon Fernado's petition, the family court entered an emergency protective order ("EPO") on his behalf and scheduled a hearing on the petition.

At the hearing, Fernado testified the parties had been in a relationship for fifteen years and lived together up until the date he filed his petition for protection. He testified that during an argument in early February 2020, Hunn became angry and punched him in the right side of his chest where he had previously had heart surgery. He then exited the home. Hunn followed and threw his clothes onto the ground. Fernado stated he would have left the premises but Hunn refused to give him the keys to his truck. She also threatened that he "would be sorry" and "was going to pay" if he called the police. Video Record ("V.R.") 3/26/2020, 10:14:15-10:14:30. Fernado called the police but testified he did not report that Hunn punched him because he feared she would act on her threats. After both parties spoke to the police, Fernado left the home. Fernado testified he was afraid of Hunn and wished to have no further contact with her.

During his testimony, Fernado presented a photograph he testified showed bruising on the right side of his chest and arm. He stated he took the

-2-

photograph two days after Hunn punched him. Fernado testified the photo was a fair and accurate depiction of his injury and had not been altered in any way. Over Hunn's objection, the family court admitted the photograph into evidence as petitioner's exhibit #1.[2]

The family court then heard testimony from Fernado's current girlfriend. The woman testified to having received a FaceTime video call from Hunn. Fernado was present with Hunn when she called his girlfriend. She testified that during the video call she observed Hunn chase Fernado and grab him by the shoulders while questioning him about the nature of his relationship with the witness.

During Hunn's testimony, she admitted the parties had an argument but denied having punched or otherwise touched Fernado. She further denied having ever threatened him. She asked Fernado to leave the house three to four times during the argument, a fact which Fernado did not deny on cross-examination. Throughout the hearing, Hunn and her counsel repeatedly emphasized that the house in which the parties lived was hers and Fernado had no claim of ownership to it. She further testified the parties had not been in a relationship since 2013, and Fernado moved out of the home at that time. Despite

---

[2] We note that the photograph was saved on Fernado's cellphone. A printed copy of the photograph was not made part of the paper record. Instead, the photograph was made part of the video record using a document camera.

this, Hunn admitted to still having a large amount of Fernado's clothing at her home and assisting him in paying his child support obligation and taxes, as well as purchasing him a cellphone in the time since the purported end of the relationship. Additionally, despite claiming Fernado had not lived in the home for seven years, Hunn referred to it as Fernado's "home" during her testimony. V.R. 3/26/2020, 10:46:55-10:47:00.

Next, the family court heard testimony of two witnesses for Hunn. First, Hunn's adult son testified to being present for the argument between the parties. He stated he did not see his mother hit Fernado or hear her threaten him during the argument. He heard Hunn ask Fernado to leave the house. Hunn's son-in-law then testified to being in the home at the time of the argument. However, he was in a different room and did not hear or see any part of the altercation between the parties.

At the close of evidence, the family court entered Form AOC-275.3, the order of protection, finding by a preponderance of the evidence that acts of domestic violence had occurred and may again occur. Record ("R.") at 14. On the form order, the court marked that the parties were "unmarried, currently or formerly living together." R. at 13. The DVO restrains Hunn from any violent or unlawful contact or communication with Fernado for one year. On the associated docket sheet, the court reiterated that, after the testimony, it found domestic

violence had occurred and may again occur. The court also gave instructions for the Russell Springs Police Department to escort Fernado to retrieve his clothing and tools from the residence. No post-judgment motions were filed by either party. This appeal followed.

## STANDARD OF REVIEW

A court may enter a DVO if it finds "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS[3] 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, 546 S.W.3d 576, 580 (Ky. App. 2018) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)). "Domestic violence and abuse" includes "physical injury." KRS 403.720(1).

"[T]he standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous." *Dunn*, 546 S.W.3d at 578 (citations omitted). A family court's findings are not clearly erroneous if they are "supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Substantial evidence is that "which

---

[3] Kentucky Revised Statutes.

would permit a fact-finder to reasonably find as it did." *Randall v. Stewart*, 223

S.W.3d 121, 123 (Ky. App. 2007) (citation omitted).

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [family] court.

*Moore*, 110 S.W.3d at 354 (citations and internal quotation marks omitted).

Furthermore, a family court's evidentiary rulings should only be

reversed "where there has been clear abuse of discretion." *Page v.*

*Commonwealth*, 149 S.W.3d 416, 420 (Ky. 2004) (citation omitted). "The test for

abuse of discretion is whether the trial judge's decision was arbitrary,

unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v.*

*English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

On appeal, Hunn raises three arguments: (1) the court improperly

admitted and relied upon a photograph; (2) the evidence presented was insufficient

to support the family court's finding that domestic violence occurred; and (3)

insufficient evidence was presented to support the court's finding that domestic

violence may again occur.

First, Hunn argues the family court improperly admitted and relied upon the photograph admitted as petitioner's exhibit #1. Hunn claims the photograph was not properly authenticated under KRE[4] 901(a) because it shows no identifying features of the subject, bears no date on which it was taken, and its subject is indiscernible. However, Hunn did not object on grounds that the photograph was undated or indiscernible before the family court and now requests palpable error review for these unpreserved issues. On this basis, we will first consider Hunn's preserved argument that the photograph should not have been admitted because it does not contain any identifying features of the subject.

Pursuant to KRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Testimony of a witness with knowledge that "a matter is what it is claimed to be" is a form of authentication or identification which conforms with the requirements of KRE 901(a). KRE 901(b)(1). Trial courts have broad discretion in admission of photographic evidence. *Woodall v. Commonwealth*, 63 S.W.3d 104, 131 (Ky. 2001) (citation omitted).

Herein, Fernado testified to taking the photograph himself two days after the incident between the parties and stated the photograph showed bruising to

---

[4] Kentucky Rules of Evidence.

the right side of his chest.  Hunn does not allege what other features should have been shown in the photograph for identification and authentication purposes. Fernado's testimony is sufficient to prove the photograph depicts bruising to his chest.  Therefore, the family court did not abuse its discretion in admitting the photograph.

Furthermore, as to the unpreserved arguments that the photograph should not have been admitted because it is undated and indiscernible, Hunn requests review pursuant to the palpable error standard set out in CR[5] 61.02.  "A palpable error which affects the substantial rights of a party may be considered by the court on motion . . . even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."  CR 61.02.  Palpable is defined as "easily perceptible, plain, obvious and readily noticeable."  *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997), *abrogated on other grounds by Nami Resources Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018).  "Fundamentally, a palpable error determination turns on whether the court believes there is a substantial possibility that the result would have been different without the error."  *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (citation omitted).

---

[5] Kentucky Rules of Civil Procedure.

Hunn's claims the photograph should not have been admitted because it contains no date and is indiscernible must fail under the palpable error standard. Fernado testified to the date on which he took the photograph as well as the subject matter. The family court accepted this testimony as sufficient for authentication under KRE 901(b)(1). We will not disturb this finding.

Next, Hunn alleges the evidence presented at the hearing was insufficient to support the finding that domestic violence occurred. Specifically, she argues her son was the only witness, other than the parties, who was present at the time the alleged violent act occurred and that he testified to witnessing no such act.

After hearing the testimony of Fernado, Fernado's girlfriend, Hunn, Hunn's son, and Hunn's son-in-law, as well as reviewing the photographic evidence presented by Fernado, the family court chose to believe Fernado's version of events, finding an act of domestic violence had occurred and Fernado was the victim. Although Hunn presented the testimony of her son, the family court is "in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) (citation omitted). Giving due deference to the family court's exclusive role as fact-finder, we conclude the family court did not err in finding by a preponderance of the evidence an act of domestic violence occurred.

Finally, Hunn argues the evidence was insufficient to support a finding that domestic violence may again occur. Specifically, Hunn claims there is no chance that further acts of violence will occur so long as Fernado does not return to Hunn's home or, if he does return, leaves when he is asked to do so by Hunn. Hunn particularly emphasizes the house where the parties resided was hers and alleges Fernado had no right to be on the premises.

Within this argument, Hunn contends the family court's failure to make a finding as to whether Fernado had a right to be on the premises at the time of the alleged violent act necessitates reversal. Despite having repeatedly alleged the house belonged to her alone, upon the family court's failure to make a finding of fact regarding Fernado's right to be on the premises, Hunn did not file a motion requesting additional findings by the family court pursuant to CR 52.01. "It is fundamental that a party who asserts a claim must prove that claim to the satisfaction of the trier of fact, and on failure of the fact-finder to rule on the contention, the pleading party must seek a ruling from the [family] court by means of a request for additional findings of fact." *Vinson v. Sorrell*, 136 S.W.3d 465, 471 (Ky. 2004).

Furthermore, Hunn has cited no authority supporting her claim that her violent act would have been justified had the family court found Fernado had no right to be on the premises. Therefore, even when reviewing for palpable error,

-10-

we cannot find that the family court committed an error "so egregiously prejudicial as to cause manifest injustice." *Nami Resources Co.*, 554 S.W.3d at 338 (internal quotation marks omitted).

A "member of an unmarried couple," including "a member of an unmarried couple who are living together or have formerly lived together" is eligible to petition for protection from domestic violence. KRS 403.720(5). There is "no minimum period of time the couple must have cohabitated before there is standing to seek a DVO." *Benson v. Lively*, 544 S.W.3d 159, 165 (Ky. App. 2018) (citation omitted). There is no requirement that a petitioner prove ownership or any other right to be on the premises to request protection. Both parties testified to living together for some period during their relationship. Therefore, Fernado met the statutory definition of a qualifying individual when he petitioned for protection.

Ultimately, the family court was unconvinced by Hunn's argument that a finding that domestic violence may again occur could not be made because Fernado could protect himself by simply avoiding the home the parties previously shared. Furthermore, Hunn's argument in this regard has no basis in law. "[T]he domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence." *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky. 2003) (citing KRS 500.030). Domestic violence statutes should be interpreted to "[a]llow victims to obtain effective,

-11-

short-term protection against further wrongful conduct in order that their lives may be secure and as uninterrupted as possible[.]" KRS 403.715(1). Placing the burden on the victim to avoid the perpetrator in order to protect himself, rather than granting him the protection of a DVO, would certainly run counter to the intent of the legislature in creating the domestic violence statutes. On this basis, we must conclude the family court did not err in finding by a preponderance of the evidence domestic violence may again occur.

Relatedly, Hunn raises two additional arguments not made before the family court and requests review for palpable error under CR 61.02. First, Hunn claims under *O'Leary v. Commonwealth*, 441 S.W.2d 150 (Ky. 1969), had she used force against Fernado, she would have been justified because he trespassed and refused to leave her property.

*O'Leary* concerns the criminal convictions of four individuals for breach of peace for protesting on the campus of the University of Kentucky. *Id.* at 152. Therein, in affirming the convictions in light of the appellants' argument that the law was unconstitutionally vague or, in the alternative, could not be applied to exercises of First Amendment rights, the appellate court held "[t]he incitement of force and violence implicit in a refusal to move upon rightful order of the owner or custodian of property does not depend on the amount of noise being made or not made by the trespasser." *Id.* at 158. However, even if Fernado had trespassed onto

Hunn's property and refused to leave, nothing in the *O'Leary* decision supports her claim that she would have been justified in punching him to attempt to remove him from the premises. Therefore, the family court committed no error and Hunn's claim must fail.

Additionally, Hunn claims that, were Fernado's testimony true, her actions against him would be akin to the "unwanted touching" referenced in *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). Under the standard set out in CR 61.02, we again find no error, palpable or otherwise. Hunn's punch resulted in bruising to Fernado's chest, supporting the family court's finding that an act of domestic violence occurred. Therefore, Hunn's claim must fail.

## **CONCLUSION**

For the foregoing reasons, the DVO entered by the Russell Circuit Court, Family Division, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Coleman M. Hurt
Jamestown, Kentucky

BRIEF FOR APPELLEE:

Michelle Renee Fisher
Somerset, Kentucky